Good afternoon, Your Honors. If it please the Court, wait. Answered on behalf of the plaintiff and appellant, Keith Warkentin. Excuse me. Does counsel on video, can you hear in all of that? He's on. Yes. Yes, Justice. I can hear very well. Thank you. Thank you. As is often said, there is no justice in a Ninth Circuit where judge is not justices. Thank you. Thank you. This is a disability insurance claim and bad faith claim that was subject to a motion for summary judgment that under the clear reading of the cases and the facts as exist in the record, should never have been granted. If I can start with the first issue that mandates reversal is in the motion to strike that was filed simultaneously with my client's answer by his former counsel. They raised the affirmative defenses of waiver of the claim for rescission. The court issued an order, the district court issued an order on the very same day as the hearing on the motion for summary judgment, which was March 23rd. And four days later issued its ruling on a motion for summary judgment, four days later, finding that there were no triable issues of fact and that federator was entitled to judgment as a matter of law. However, in the motion to dismiss order, which is in the record at ER 39, excuse me, that order specifically details that the waiver contention of my client raised by his former counsel created factual issues that were inappropriate to decide on a motion to strike. Could you give us a little clue where this is all heading? Sure. The summary judgment is granted based upon federated's claim that is entitled to rescission under the policy. You don't get to that point if federated waived that defense. And the motion to strike, in fact, raised that defense. And the district judge found in the ruling on the motion to strike, which is also subject to the appeal, that there were issues. It was a factual-based defense. So if there are triable issues of ---- Well, was it factual-based in the sense that you needed facts, i.e., it couldn't be done on the pleadings, or factual-based in the sense that he determined that there were conflicting facts? Were there facts submitted at that point? Well, yes, there were, because there were ---- Because there were affidavits and declarations and so on. That's correct, plus on the summary judgment. And keep in mind that we do not have a record as to what transpired at that hearing. That was due to failure of the court's recording system. There's a very brief ---- Which hearing? I'm sorry. The motion for summary judgment hearing, which was also the same day as the order on the motion to strike. So the sequence, maybe the sequence ---- How about just summing up? Are you saying that at the day of the summary judgment hearing, there was already pending before the district court a motion to strike the precision affirmative defense, and it had been responded to by the defendants and was, therefore, ripe before the district court so that it had that before it constructed, you know, as a judicial document. At the same time, it was then proceeding to decide the summary judgment on the assumption that there had been no opposition filed. Therefore, all of the allegations of the summary judgment motion were taken as true. Yes. And that's one reading of the court's order that they were assumed to be true. And I'll address that. I'll come back to that. I don't argue the ---- I'm just trying to get the sequence. In other words, you're saying that the district court had before it a document from the insurance company that said, the rescission defense raises factual matters and that the waiver argument of your client triggered those factual issues. There were factual issues going to whether or not rescission was viable. Is that correct? That's correct because ---- Not just as to whether there was waiver. The answer in the counterclaim was filed January 31st. May I? I would like the answer to the question as well. And I had thought you were saying the opposite, so I really do want to know which it is. I thought what you were saying was that there was essentially summary judgment or something very like it was denied with respect to waiver, and that would supervene the question that was raised in the summary judgment motion, because if there was a waiver, you wouldn't have ---- you wouldn't get to the merits of the question of whether there was rescission. So therefore, at the very least, there is a question for trial as to waiver. Is that what you're saying? Yes. There is a question as to whether ---- At the very least. Pardon me? At the very least. That doesn't answer anything else. That's right. And just to focus, the motion for summary judgment was filed February 14th. The answer to Federated's counterclaim was filed February 21st along with the motion to strike. And so prior to the hearing on the motion for summary judgment on March 23rd, Magistrate Beck had before him and as his what we believe to be fatally inconsistent order on the summary judgment motion indicated, he indicated that he searched the record, as he's required to do, because prior counsel's failure to file a timely opposition, granting a motion for summary judgment cannot be a sanction for that. And point of fact, this circuit has taken the ---- But counsel, if you could just finish the sentence, because we're really trying to get the sequence. Yes. Okay. So the sequence is the motion to strike is filed March ---- Excuse me, February 21st. It was denied by the order I referred to on March 23rd, which is also the same date of the hearing on the motion for summary judgment. Okay. And in that order, the district court found that the issue that my client raised of Federated's waiver of the right to rescind created factual issues that prevented him from granting the motion to strike the counterclaim. So at a minimum, there are triable issues of fact as to whether or not Federated waived its right to rescind. And the records replete with the factual basis for that, including that they were aware in March of 2008 of the supposed misrepresentation that my client had had chiropractic treatment before he took out the policy. Can you tell me something? Where is this whole discussion in your brief? It is ---- Part of it is on page 7 of my opening brief. Well, that's the statement of the case, but where is there an argument based on it? There is ---- I'm not sure that I noted when I was reviewing exactly where I had put that argument. It certainly has been an argument the entire time. As a matter of fact, Federated's position has been that Mr. Workington waived the waiver argument, which is why I wanted to address initially that the motion to strike did in fact raise that. Under Rule 12b, you can raise matters by means of motion that were clearly raised in a motion to strike that was filed simultaneously with the answer, so it was properly waived. So the waiver issue has been briefed in the record. Let me turn now to the second issue that mandates reversal of the summary judgment, and that is that the district court applied the wrong legal basis to grant this motion. How do we know what basis it applied? Are you referring to page 5 of its order? Yes, I believe that's it. I believe that's where he says that I am entitled to grant this based upon even unintentional or negligent misrepresentations. Well, he has one paragraph on that page that speaks of actual fraud and doesn't really kind of stop short of making an express finding. But I think it's fair to say there's an implied finding of actual fraud. And then the very next paragraph talks about a lower standard, which is, I think, what you're getting at. Exactly. So you said that he's applied the wrong standard, and my question is, which one did he apply? Well, it has to be, if anything, it has to be the lower standard, the incorrect standard, because there was no evidence in the record, and that's at tab 19 on the undisputed material facts. And my client's belated response to that, they're both there, to show which facts are disputed. But even if this Court were to look solely at that statement of facts, and that's all that the record was before bandage straight back, that does not justify, that does not show any intent to defraud. At best, and it's arguable in our opinion, it may show that there was a misrepresentation. Mr. Workman, if he had to. Well, you couldn't infer simply. I mean, I gather that, in fact, if Mr. Workman had gone to the chiropractor once, that would be one thing. But apparently he went 40 times. Is that accurate, something like that? I'm sorry, Your Honor. Did he go to the chiropractor something like 40 times? That's what the record says. All right. And I understand that. And I'm. He maintains he wasn't actually asked for that sort of off the table, because unless you're contesting and you're not in your oral argument right now contesting, the failure to allow that evidence to be considered. So, therefore, you have somebody, the uncontested fact at this point is that he went to a chiropractor 40 times and when asked, said he didn't go to the chiropractor. You can't infer an intention to fraud just from that? No. I think it's absolutely improper for a trial court on a motion for summary judgment to make a factual determination as to intent. Intent's an issue of fact for a jury. It's not for a trial judge. Across the board. And there was, pardon me? Across the board. Your position is there's nothing, no scenario where that would be triggered. If my client had not responded and the district court said I, even though he filed the papers late, I looked at them and they don't create a trialable issue of fact, if you take him at his word, it's unsupported. Okay. So in other words, if the, I think what you're saying is that if there had been no opposition at all, you think the summary judgment motion didn't have what it needed? Absolutely. Okay. And so then the answer to Judge Berzon's question is what? Why couldn't the judge infer actual, you know, intent to defraud from the 40 undisclosed chiropractor visits? Because Mr. Workentine had offered explanations for. Wait a minute. He didn't have that. The judge didn't have those explanations. We're assuming that there is no explanation. Our hypothetical is there's no opposition. Okay. I still believe that just simply from the undisputed facts that Federated put there, that there were, and I don't think that they're undisputed facts, said that there was 40. I think it was just that he had gone to the chiropractor. I think there were three, that he underwent chiropractic treatments during the years 2000, 2001, 2002, 2003, 2004, and 2005. Correct. The second one was Workentine's recorded response, no, to the policy application question, have you seen any doctors, chiropractors, so forth, in the last 5 years. And then the third was that Worken did not disclose in his application for the policy that he had been treated by Dr. Chang. I think those are the three uncontested facts that the district court relied upon. Have I got that wrong? That's the only three facts that even address this that were properly before the court. Okay. And so, and your position is that that's not enough. So do you want to tell us why? Number 19 says he underwent chiropractic treatment during the years 2000 to 2005. It doesn't indicate the numbers. Your Honor, it didn't say 40, so that wasn't really before the court. It came in at some later point? Yes. There's been a lot of augmentation later by Federated with, for example, a, I'm running out of time. There was a recorded statement taken in March of 2008 in connection with the claim itself. And that recorded statement was submitted in opposition to our motion for reconsideration. So since I am short on time, I will leave the 20 seconds or so to respond to any further questions. All right. I'll give you a minute in response, in a moment. Okay. Mr. Koster. Yes. Good afternoon, Judges of the United Circuit Court of Appeals. First, I'd like to apologize for not being able to be there personally. I thank the Court for allowing me to appear at the video conference. I'd like to commend your staff for the excellent job they've done in setting this all up. This is quite new and exciting in some ways. May it please the Court, I'm Daniel Koster. I represent Federated Life Insurance Company, or FLIC in this matter. Good afternoon, Mr. Hansard. I'd like to address the waiver issue because I'm not quite sure I understand what Mr. Hansard is getting at. Well, first of all, is his basic scenario – I'm not sure this is in his brief, so let me start that way. But is his basic scenario correct, i.e., was there such a motion and was it denied on the basis that there are factual disputes? No, Judge Berzon, and let me explain what was done. Mr. Workington filed an answer to the counterclaim, and I think that's what Mr. Hansard is referring to. The motion to strike was to strike Federated's amended answer, or answer to his first amended complaint, and strike the counterclaim for rescission. So I think he's confused about what he's talking about here because the motion to strike had to do with Federated's claims, not Mr. Workington's claims. But isn't the entire case about rescission? I mean, isn't the reason why he's not entitled to get money is because you were entitled to rescind? Yes, and I think the Court properly held that. We were entitled to raise the affirmative defense of rescission and the counterclaim of rescission. That's why the Court denied the motion to strike. Now, with respect to the waiver argument, which has not been briefed, by the way, the way Mr. Hansard has presented it, the waiver argument was never raised in Mr. Workington's answer to our counterclaim. So we addressed that on page 34 of our brief. So he never raised the issue of waiver in any of his pleadings. So I think he's mixing apples with oranges here and confusing myself and the Court. So, and when the Court ---- Excuse me, counsel. Yes. Just to clarify then, Federated never put in a document in response to the motion to strike saying that there were factual issues that would have to be litigated for the Court to rule on the motion to strike your counterclaim raising rescission? Correct. What we argued was that it was similar to what you would be a Rule 12b motion in federal court or a demer in state court, that based on the ---- you'd have to just look at the pleadings and assume that all of the pleadings were true and correct. And if they stated proper affirmative defenses and they stated proper claims, then you could not strike them, and that's what the Court ruled. The Court didn't make a factual finding, and we didn't certainly suggest that there were facts to suggest whether or not a waiver existed. But the fact of the matter, and I think what is more important, is that Mr. Workington never raised the issue of waiver in his pleadings to attack our claim of rescission. That's the important issue here. And so we addressed that on page 34 of our brief. And so if you don't raise them ---- You mean with respect to the summary judgment on the merits? Exactly. Correct. So now let me address the issues about fraud. Do you happen to know, and I fully understand if you don't, where in the excerpts of record the order on the waiver motion is? The motion to strike? You probably don't because you weren't anticipating this, but in case you do. Well, I could call it up on my computer, but I don't think I can. All right. Go on with your argument. I'd rather you go on with your argument. Go ahead. It's in the record, Your Honor. Okay. All of the pleadings are true and correct. Well, I note that the excerpts of record are supposed to be set up so that all the opinions are in the first volume, but it's not set up that way. So go ahead. So anyway, getting to the fraud issue, I would point out that in the motion for summary judgment that we filed, we set forth 23 undisputed facts of which I believe 20 of those facts were based on the pleadings and judicial admissions submitted by Mr. Worthington himself who supported the claim. Counsel, before you get to that. Counsel, excuse me. But before you get to that, could you just answer for me whether Federated is taking the position that it needed, that it could rescind on a showing of anything less than actual fraud? Not in this circumstance, Judge Kagan.  So counsel, forgive me. Go ahead. I think in this particular situation, because of the two-year contestability period, we had to show fraudulent misrepresentation, which we set forth in our motion and outlined in our brief. Which is traditional actual fraud, not something less. Right. Under California Civil Code Section 1572. And if you look at that section, I think it sets forth a number of circumstances in which actual fraud is shown. And while Mr. Hansard focuses on the intent to deceive, there's also the situation of an inducement to enter a contract. And here, what you have is a situation where it's undisputed that Mr. Worthington had signed documents attesting to the fact that he had made certain representations. But it remains true, despite the fact that his facts didn't come in, that the inferences have to be drawn in his favor on summary judgment, right? All inferences. Yes. I think that certainly the reasonable inferences are to have to be drawn in the non-reasoning. Okay. So then the question is whether — and did Mr. Hansard, or rather, more accurately, Judge Christian, actually read — accurately read what was in the record on the chiropractor visits at the time of the summary judgment motion? Absolutely. Okay. So from that, the fact that he went to see a chiropractor in several different years and didn't say so on the form, without any sense of the numbers of times he went or what he went for or anything else, things that came out later, was that sufficient basis to infer either kind of fraud? I believe so, Your Honor. Why? In this case, it certainly was deliberate. Can I ask you, just to piggyback on this question, which provision of California Civil Code 1572 are you relying on? Are you relying on intent to deceive, or are you relying on inducement? Because the statute says you have to have either-or. And the judge was essentially deciding as a matter of law that the undisputed facts, you know, rang the bell, one of those bells. And that's what I'm trying to get at. Are you — a minute ago, it sounded like you were relying on inducement, that Federated was induced into entering into this contract by those representations. Is that right? Well, Judge Kristen, I think what I was pointing out is that Mr. Hansen only was relying on one proportion of 1572, when in fact there are two. Well, that's right. But it would seem particularly difficult to infer. In order to infer the inducement, you would have to know something about what level of — I mean, I assume that Federated does not deny coverage to anybody who ever goes to a chiropractor, or even to somebody who goes to a — and so unless there's something in the record that says that if they went to a chiropractor in four different years, we wouldn't have granted him coverage, and there isn't, I gather, I don't see how the inducement thing works. Well, I would agree that Federated doesn't look to, you know, not, you know, comply with the provisions of their insurance contracts. But in a situation like this, where questions are asked and answers are given and insurance companies rely on those answers — Yes. But that doesn't prove inducement, because you have to say something about what would have made a difference. Well, I think we pointed out in our brief what would have made a difference. It made a difference the fact that he didn't disclose the fact that he had chiropractic care. Meaning that you wouldn't have entered into the contract if you did, per se and necessarily? Yes. And I think there's evidence of that. Where is there evidence of that? When anybody goes to a doctor, can't get covered? Well, no, not my — no, that's not true. I think the fact of the matter is when the questions were asked on the application, they were material. And there are statements that Mr. Worthington attested to when he signed the application and the contract that he realized that Federated was relying on the information. And when you have a disability insurance policy such as this, the most important questions are the questions having to do with health. Counsel? Can I ask you a question based on what the Court did find and its rationale? You're relying on a contractual provision which you say requires you to establish traditional fraud, intentional fraud, correct? Correct. Okay. So the district court at ER 32 says, further pursuant to California law, misstatements or concealment of any material facts in an application for insurance, even if unintentional, entitled the insurer to rescind. And then he goes on to say, Worthington's affirmance that he had not seen any chiropractors and his failure to describe his back condition were misrepresentations and concealment of facts in his application. And then facts concerning his back pain and treatments are material. Now, that may be what the statute says. But as you've acknowledged, unintentional concealment, unintentional statements wouldn't meet the criteria of rescission. So why isn't, as a matter of law, the judge's inference automatically unreasonable? Because even if Mr. Worthington conceded that he had seen the chiropractors, even if for 40 times, that is not enough. It doesn't prove, it doesn't establish conclusively as a matter of law that he did it in order to defraud Federated. It could have been by mistake. It could have been because they didn't hear the question clearly over the phone. In other words, he was presented, according to the testament, I believe, the declaration. He did not have the form in front of him when he was answering no to questions. Correct? Well, I... Is that correct? He was... Well, he gave a telephone interview, which he acknowledges. And he acknowledges that those questions were asked of him. He acknowledged that they were... He has admitted that he answered specifically a question that included chiropractors in the question? Yes, he has. He made those admissions when he signed the form. No, when he signed the form, he did. Right? But did he... There's no evidence as to what he actually was told over the phone other than from Federated. So is it not a reasonable inference to say, yes, one inference could be that he was doing this to conceal his history, or there are... It could be reasonable that he didn't hear the question, reasonable that he didn't... The question wasn't posed in the detail of which Federated's underwriter claims. And as he said, he didn't read the detail of what was said when he signed the policy. Aren't those issues a fact? No, they're not, Your Honor. And it's not reasonable to make those inferences. And let me tell you why. And we pointed that out... Well, when you... Excuse me. I'm sorry. Just so you answer the question, because I made it very long, I want you to answer it in the context of a judge who's viewing and making these inferences on the assumption it could be unintentional. First of all, he never raised those in his opposition. And the opposition... No, but that's not the question. The question is, is what inferences, if you're drawing all inferences in favor of the non-moving party, what inferences are allowed or permissible as a matter of law? Because what, in effect, he is doing, Judge, is he's controverting his own testimony, which is improper and not allowed. He didn't have any testimony. Just a minute. He had no... He's not testifying, Counsel. He had no testimony. The judge is evaluating the record based on the absence of his testimony. Right. Well, and the record is clear and undisputed that he did read certain things. He did make certain statements. He did make certain representations that he did not have such treatment, which was relied upon by Federate. But I just... Answer my question as to why that's the only reasonable inference of intent to do so. Because he deliberately signed a contract. He deliberately attested to the fact that all of the information was true. He deliberately signed statements that said he read and agreed with all of the statements in the interview questions. He signed a statement that said he understands Federate is going to rely on this information in deciding whether to issue his insurance. And all the time, he knows he's been to a chiropractor for at least 40 times... Wait a minute. The 40... I'm going to refine the question now. This is the last question, I hope, unless one of my colleagues has a question. But you're out of time. But the information before the judge at that time didn't say he was before him 40 times. He went 40 times. And I would tend to agree that if it says 40 times, that would be perhaps a basis for an inference. But it didn't say that. It didn't say how many times. It said in a few different years, which were not. And it didn't say what he went for. And it didn't say that he did so, that he remembered it at the time that he signed this thing. So why isn't, from just what was actually there then, a permissive inference that he forgot? Because, Your Honor, it is there in the record. I'm sorry? We did point out. It is in the record. In our... In the record at the time of the summary judgment the first time around? Yes. Yes. I asked you at the beginning whether the undisputed facts that were read were everything. And you said yes. And now you're saying no. I'm sorry. I misunderstood you, Your Honor. I apologize. What the undisputed facts show is that he signed documents saying he didn't have chiropractic care. And we have all of these records and testimony from the chiropractor and Mr. Worthington himself. And that was all in the summary judgment record? Yes, Your Honor. It's all there. Well, I think that's... And that's why the judge found, as part of his order, Your Honor, not only did he sign, but he does point out that he continued his scheme after the application process. And that shows the deliberation and the intent. Thank you, Your Honor. I appreciate your time. Okay. Thank you very much. I'll give you one minute of rebuttal. We're still on. Yes. Very briefly... What was in the record of summary judgment? The undisputed material facts do not indicate anything that proves intent, as the Court's already indicated in asking the questions. But there was also a record. The record is what the Court has in front of it, which is the undisputed material facts that do not, for example, indicate that there was any evidence that it was material, none of the materiality, that they would have not issued the policy. I think that you indicated that in one of your questions. So the record is the undisputed material facts. Well, wait a minute. I mean, on summary judgment, you list undisputed material facts, but that isn't the whole record on summary judgment. It's all the record we have. Because there is not a record of what was submitted at the argument, because there's no transcript of the record. What about the motion for summary judgment? Motion for summary judgment has the undisputed material facts. And there's nothing attached to it other than that? I believe that there may have been some attachments to it. How much of Dr. Chang's deposition was attached? I don't have a clear recollection. I know that it wasn't the entire deposition. I think it was only portions of it. Did it include the portion where he said there were 40 chiropractic visits? I don't believe so. It would be nice if people showed up and knew the record on both sides. Thank you very much for your time. Thank you. Thank you. The case of Waukenton v. Federated Life Insurance Company is submitted. And we are in recess. In fact, we are adjourned. Thank you very much. Thank you.
judges: FISHER, BERZON, CHRISTEN